ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| VÍCTOR RAFAEL MERCADO DE LA PEÑA, RAFAEL ERNESTO MERCADO DE LA PEÑA, TANIA XAMAYTA MERCADO DE LA PEÑA<br><br>Parte Peticionaria<br><br>v.<br><br>GERÓNIMO MERCADO DE LA PEÑA, SYLIVA DE LOURDES DE LA PEÑA ARROYO<br><br>Parte Recurrida | TA2026CE00550 | *Certiorari,* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: GB2024CV00904<br><br>Sobre: División o Liquidación de la Comunidad de Bienes Hereditarios |
| --- | --- | --- |

Panel integrado por su presidenta, la Jueza Romero García, el Juez Monge Gómez y la Jueza Prats Palerm.

Monge Gómez, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 18 de mayo de 2026.

Compareció ante este Tribunal la parte peticionaria, el Sr. Víctor Rafael Mercado de la Peña, el Sr. Rafael Ernesto Pablo Mercado de la Peña y la Sra. Tania Xaymara Mercado de la Peña (en adelante y en conjunto, "Peticionarios"), mediante recurso de *certiorari* presentado el 5 de mayo de 2026. Nos solicitó la revocación de la *Resolución* emitida el 5 de abril de 2026 y notificada al día siguiente por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, "TPI"). Por medio de esta determinación, el foro primario dejó sin efecto una orden de descubrimiento de prueba, pues entendió que carecía de jurisdicción.

Por los fundamentos que expondremos a continuación, *expedimos* el auto de *certiorari* y *revocamos* la *Resolución* recurrida.

**I.**

El presente recurso tuvo su génesis el 11 de octubre de 2024, cuando los Peticionarios presentaron una "**Demanda de División y Liquidación de Comunidad Hereditaria**" (en adelante, "Demanda") en contra del Sr. Gerónimo Mercado de la Peña y la Sra. Sylvia de la Peña (en adelante y en conjunto, "Recurridos") sobre división y liquidación de la comunidad hereditaria de la sucesión de Víctor Rafael Mercado Díaz. En síntesis, alegaron que el causante falleció intestado dejando como herederos a las partes epígrafe. Sostuvieron que, previo a su muerte, el señor Mercado Díaz estuvo hospitalizado en estado comatoso. Añadieron que tanto durante este periodo de tiempo en el hospital y tras la muerte del causante, todos los activos y/o bienes han permanecido bajo el uso y control exclusivo de los Recurridos. Indicaron que, a pesar de los intentos extrajudiciales para realizar la liquidación de la comunidad hereditaria, los Recurridos se negaban a proveer la información necesaria para proceder con la liquidación del caudal. Adujeron que, mientras el señor Mercado Díaz se encontraba en estado comatoso, los Recurridos transfirieron unas acciones del causante del estado de Nueva York en Turner Towers Tenant Corp. (en adelante, "Turner Towers") al señor Gerónimo Mercado de la Peña, mediante el uso indebido de un poder. Por último, solicitaron al TPI el nombramiento de un administrador o contador partidor hasta tanto se realizara la partición de la herencia.

Por su parte, el 26 de marzo de 2025, los Recurridos presentaron su "**Contestación a Demanda**", a través de la cual indicaron que previo a la partición de la herencia, procedía la liquidación de la comunidad post ganancial con la señora de la Peña que surgió luego el fallecimiento del señor Mercado Díaz.

Luego de varios trámites procesales impertinentes, el 16 de diciembre de 2025, el TPI celebró una vista de estado de los procedimientos. En lo pertinente, el foro de instancia estableció los siguientes términos para el descubrimiento de prueba:

[…]

La parte demandante deberá informar el perito tasador que trabajará las acciones en New York y tendrá hasta el 30 de enero de 2026. En adición enviará el Currículum Vitae a la parte demandada.

[…]

El 17 de abril de 2026 la parte demandante presentará los informes de tasación sobre las acciones de New York.

El 29 de mayo de 2026 la parte demandada informará si contratará perito para valorar las acciones de New York. De no informar se entenderá que no tendrá.

El 23 de julio de 2026 debe estar presentado el informe de las acciones de New York por la parte demandada en caso de haber contratado perito.

El descubrimiento de prueba culmina el 18 de septiembre de 2026.

[…]

Conforme a lo ordenado, el 11 de febrero de 2026, los Peticionarios presentaron una "**Moción Informativa**" en la que anunciaron la contratación del perito que realizaría la tasación de las acciones de Turner Towers. Seguidamente, el 26 de febrero de 2026, instaron una "**Solicitud de Orden para que la Parte Demandada Informe y Provea Fechas Disponibles para las Inspecciones del Perito**". En síntesis, detallaron varias comunicaciones en las que se le solicitó a los Recurridos su disponibilidad para inspeccionar las acciones relacionadas en los apartamentos 5D y 16D ubicadas en Turner Towers.

En respuesta, el 9 de marzo de 2026, los Recurridos presentaron su "**Moción en Cumplimiento de Orden, en Oposición a Moción Solicitando Orden en Sumac 86 y de Falta de Jurisdicción**". Explicaron que las acciones en controversia pertenecen a una cooperativa de viviendas de conformidad con las leyes del estado de Nueva York. Arguyeron que la titularidad del apartamento 16D fueron otorgadas el 25 de septiembre de 2020 a la señora de la Peña, en virtud de la determinación del Tribunal Supremo de Nueva York y, por tanto, no forman parte del caudal a dividirse.

Por otro lado, sostuvieron que el apartamento 5D y sus acciones se encontraban a nombre del codemandado, Sr. Gerónimo Mercado de la Peña, desde antes del fallecimiento del causante. Además, los Recurridos explicaron que, para el 10 de agosto de 2020, el Tribunal Supremo de Nueva

York nombró como tutor provisional al Sr. Gerónimo Mercado de la Peña. Indicaron que las partes no realizaron el procedimiento de *turnover* según fuera ordenado, por lo que, el señor Mercado de la Peña continuaba como titular del inmueble. Insistieron en que si los Peticionarios desean dejar sin efecto alguna transacción referente al traspaso de las acciones debían hacerlo en los tribunales de Nueva York. Finalmente, arguyeron que, en vista de que las acciones no figuran a nombre del fenecido, éstas no formaban parte del caudal hereditario.

Posteriormente, el 16 de marzo de 2026, los Peticionarios presentaron una "**Réplica a 'Moción en Cumplimiento de Orden, en Oposición a Moción Solicitando Orden en Sumac 86 y de Falta de Jurisdicción'**". Argumentaron que, conforme al Código Civil, se consideran bienes muebles por disposición legal "los intereses, las participaciones o las acciones en entidades jurídicas, aunque estas sean titulares de derechos reales sobre bienes inmuebles". 31 LPRA sec. 6063. Insistieron en que el traspaso de 581 acciones a nombre exclusivo del Sr. Gerónimo Mercado de la Peña constituyó una liberalidad entre vivos que debía ser computada para conocer su valor y ser imputada a su legítima. **Detallaron que la controversia no es sobre la titularidad o la validez de las transferencias**, por lo cual, sostuvieron que correspondía el descubrimiento de prueba solicitado para determinar cómo se iban a imputar y calcular la transferencia de dichas acciones como parte del caudal hereditario.

Atendida la postura de las partes, el 5 de abril de 2026, el TPI emitió una *Resolución y Orden* en la cual dejó sin efecto la orden de tasación de las acciones de Turner Towers. Concluyó que la controversia versaba sobre unos bienes inmuebles fuera de Puerto Rico y, por tanto, carecía de jurisdicción.

Inconformes, los Peticionarios acudieron ante este Tribunal mediante el recurso de epígrafe, en el que señalaron la comisión de los siguientes errores:

A. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL LIMITAR EL DESCUBRIMIENTO DE PRUEBA PERTINENTE Y NECESARIO PARA PODER FIJAR CORRECTAMENTE LA PARTICIÓN DEL CAUDAL

HEREDITARIO INCLUYENDO SIN LIMITARSE A, LA IMPUTACIÓN O COLACIÓN DE AQUELLAS PARTIDAS QUE INCIDEN SOBRE EL REGIMEN DE LEGÍTIMAS EN NUESTRO ORDENAMIENTO SUCESORAL.

B. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL CONCLUIR QUE CARECE DE JURISDICCIÓN PARA AUTORIZAR EL DESCUBRIMIENTO DE PRUEBA DIRIGIDO A LA VALORACIÓN DE LOS ACTIVOS UBICADOS EN NUEVA YORK.

El 15 de mayo de 2026, los Recurridos comparecieron mediante "**Oposición a Solicitud de *Certiorari***".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II.

## A.

El auto de *certiorari* es el recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior. 800 Ponce de León v. AIG, 205 DPR 163, 174 (2020); Mun. de Caguas v. JRO Construction, 201 DPR 703, 711 (2019). A pesar de ser un recurso procesal excepcional y discrecional, el tribunal revisor no debe perder de vista las demás áreas del derecho. Mun. de Caguas v. JRO Construction, *supra,* pág. 711.

Así, con el objetivo de ejercer de manera prudente nuestra facultad discrecional, es preciso acudir a lo dispuesto en la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40; Banco Popular de Puerto Rico v. Gómez Alayón, 213 DPR 314, 336 (2023). Esta norma cobra mayor relevancia en situaciones en las que no hay disponibles métodos alternos para asegurar la revisión de la determinación cuestionada. Íd. A esos efectos, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, limita la autoridad de este Tribunal de Apelaciones para revisar las órdenes y resoluciones interlocutorias que dictan los tribunales de instancia por medio del recurso discrecional del *certiorari*. En lo pertinente, la precitada disposición reglamentaria, *supra*, dispone que:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter

dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable la justicia, al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. Íd.

Con el fin de que podamos ejercer de una manera sensata nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante el recurso, la Regla 40 de nuestro Reglamento, 4 LPRA Ap. XXII-B, señala los criterios que debemos considerar al atender una solicitud de expedición de un auto de *certiorari*. BPPR v. SLG Gómez-López, 213 DPR 314, 336 (2023). En lo pertinente, la precitada disposición reglamentaria establece lo siguiente:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari*, o de una orden de mostrar causa:

A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.
B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. Íd.

Nótese que, distinto al recurso de apelación, el auto de *certiorari*, por ser un recurso discrecional, debe ser utilizado con cautela y por razones de peso. Pueblo v. Díaz de León, 176 DPR 913, 918 (2009). En ese sentido, el Tribunal Supremo de Puerto Rico reiteradamente ha indicado que la *discreción* significa tener poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. García v. Padró, 165 DPR

324, 334 (2005). También se ha definido como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". Banco Popular de Puerto Rico v. Gómez Alayon, *supra*, pág. 13. En otras palabras, el adecuado ejercicio de la discreción judicial está "inexorable e indefectiblemente atado al concepto de la razonabilidad". Pueblo v. Ortega Santiago, 125 DPR 203, 211 (1990). Así pues, un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas por este último sean arbitrarias o en abuso de su discreción. SLG Flores, Jiménez v. Colberg, 173 DPR 843 (2008).

**B.**

El descubrimiento de prueba dentro del proceso civil está regulado por la Regla 23 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 23. El inciso (a) de la Regla 23.1 de dicho cuerpo reglamentario dispone que las partes podrán hacer descubrimiento sobre cualquier (1) información objeto del descubrimiento que no sea privilegiada y (2) que sea pertinente al asunto en controversia. Cruz Flores *et al.* v. Hosp. Ryder *et al.*, 210 DPR 465, 496 (2022); E.L.A. v. Casta, 162 DPR 1, 10 (2004); Alvarado v. Alemany, 157 DPR 672, 683 (2002). El concepto de pertinencia como limitación al descubrimiento de prueba, "aunque impreciso, debe ser interpretado en términos amplios". General Electric v. Concessionaires, Inc., 118 DPR 32, 40 (1986).

La referida Regla 23.1 de Procedimiento Civil, *supra*, señala que no constituirá objeción el que la información solicitada sea inadmisible en el juicio, siempre que exista una probabilidad razonable de que dicha información conduzca al descubrimiento de evidencia admisible. Íd. La amplitud del descubrimiento persigue dos (2) propósitos: garantizar la pronta solución de las controversias y evitar que en la vista en su fondo surjan sorpresas. Lluch v. España Service Sta., 117 DPR 729, 742-743 (1986); McNeil Healthcare v. Mun. Las Piedras II, 206 DPR 659, 672 (2021). Igualmente, se ha reconocido que los tribunales de instancia poseen amplia discreción para regular el ámbito del descubrimiento de prueba, con el

objetivo de garantizar una solución justa, rápida y económica. Rivera *et al.* v. Arcos Dorados *et al.*, 212 DPR 194, 203 (2023).

Para que un asunto pueda estar sujeto a descubrimiento, lo único necesario es que esté presente una posibilidad razonable de relación con la cuestión que se pretende adjudicar. Consejo de Titulares v. Triple-S, 2025 TSPR 82, 216 DPR __ (2025); E.L.A. v. Casta, *supra*, pág. 13. Es decir, las únicas dos limitaciones al descubrimiento de prueba son: (1) que el asunto que se pretende descubrir sea pertinente a la controversia que se dirime; (2) la materia que se pretende descubrir, aunque sea pertinente, no es materia privilegiada. Izquierdo II v. Cruz y otros, 213 DPR 607, 616-617 (2023).

**C.**

Según el Código Civil, la herencia "comprende los derechos y las obligaciones transmisibles por causa de la muerte de una persona, ya sea que los derechos excedan las obligaciones; que las obligaciones excedan los derechos, o solo se trate de obligaciones". 31 LPRA sec. 10917. Además, se considerarán las donaciones computables, así como los derechos y las obligaciones que le son inherentes después de abierta la sucesión. Íd.

Si hay más de un heredero llamado a la universalidad de la herencia, entonces surge una comunidad hereditaria entre ellos. Vega Montoya v. Registrador, 179 DPR 80, 87 (2010). Una comunidad hereditaria se caracteriza por ser universal, pues los herederos son titulares de una cuota abstracta de los bienes que componen la masa patrimonial; sólo cuando ocurra la partición de la herencia es que se extinguirá la comunidad hereditaria y la titularidad de los herederos recaerá sobre bienes particulares. Íd., págs. 88-89. Por ello, ningún heredero puede reclamar derecho sobre un bien en particular mientras no se haya llevado a cabo la partición. Íd., pág. 89.

Para llevar a cabo el proceso de partición de herencia, se requiere llevar a cabo varias operaciones previas. Estas operaciones particionales son: inventario y avalúo, liquidación, división, formación de lotes o hijuelas

y la adjudicación. J.R. Vélez Torres, Curso de Derecho Civil: Derecho de Sucesiones, 2da ed., San Juan, Universidad Interamericana de Puerto Rico, 1997, Tomo IV, Vol. III, pág. 523.

La legítima se define como la porción del caudal hereditario que la ley reserva para determinadas personas, conocidas como legitimarios. 31 LPRA sec. 11161. Se consideran legitimarios los descendientes, el cónyuge supérstite y a falta de estos, los ascendientes. 31 LPRA sec. 11162. Para fijar la legítima, el Código Civil establece las siguientes directrices para el cómputo del caudal: "(a) al caudal relicto valorado al momento de la partición se le deducen las deudas y las cargas no testamentarias; y (b) al valor neto se le añade el de las liberalidades computables que hizo en vida el causante, calculado al momento en que se efectuaron". 31 LPRA sec. 11671.

Sobre este particular, el Código Civil detalla cuáles liberalidades no son computables. Específicamente, el Artículo 1788 de dicho cuerpo estatutario dispone que no serán computables como liberalidades (a) los regalos de costumbre; (b) los gastos de alimentación, educación o asistencia durante enfermedades de parientes dentro del cuarto grado y (c) las efectuadas por el causante diez (10) años o más antes de su fallecimiento. 31 LPRA sec. 11672. Así pues, aquellas liberalidades efectuadas a los legitimarios, ya fuera entre vivos o por causa de muerte, serán imputables a su porción de la legítima, de excederse, serán imputables a la parte de libre disposición. 31 LPRA sec. 11673.

**III.**

En el presente caso, los Peticionarios solicitaron la revocación de la *Resolución y Orden* emitida por el foro de instancia, mediante la cual denegó su solicitud de descubrimiento de prueba sobre las acciones que el causante donó en vida en Turner Towers a los Recurridos. En síntesis, señalaron que erró el foro de instancia al concluir que carecía de jurisdicción para autorizar el descubrimiento de prueba sobre unos bienes muebles relacionados con unos bienes inmuebles sitos en el estado de Nueva York, toda vez que su única intención es que se contabilice su valor para propósitos del cómputo del caudal relicto. Adelantamos que les asiste la razón. Veamos.

Conforme adelantamos, la Regla 23.1 de las de Procedimiento Civil, *supra*, dispone que las partes podrán hacer descubrimiento sobre cualquier (1) información objeto del descubrimiento que no sea privilegiada y (2) que sea pertinente al asunto en controversia. Cruz Flores *et al.* v. Hosp. Ryder *et al.*, 210 DPR 465, 496 (2022). El Tribunal Supremo ha establecido que "para que una materia pueda ser objeto de descubrimiento, basta con que exista una posibilidad razonable de relación con el asunto en controversia". Consejo de Titulares v. Triple-S, 2025 TSPR 82, 216 DPR __ (2025).

En lo atinente a nuestra controversia, y para los efectos de la legítima, el cómputo del caudal consistirá en el (a) caudal relicto valorado al momento de la partición, deduciéndosele las deudas y las cargas no testamentarias; y (b) al valor neto **se le añade el de las liberalidades computables que hizo en vida el causante, calculado al momento en que se efectuaron**. 31 LPRA sec. 11671. En cuanto a las liberalidades efectuadas a los legitimarios, se imputará en su porción de la legítima. 31 LPRA sec. 11673.

En su solicitud, los Peticionarios explicaron que, desde el año 1999, el causante era dueño de unas acciones en Turner Towers. Específicamente, 581 de estas acciones estaban asignadas al apartamento 5D, mientras que 1,570 acciones se asignaron al apartamento 16D. Posteriormente, el 10 de abril de 2019, las acciones del apartamento 5D fueron transferidas al señor Mercado de la Peña, en virtud de un poder. Tras el fallecimiento del causante, el 19 de mayo de 2023, las acciones relacionadas con el apartamento 16D pasaron a nombre de los Recurridos.

Los autos reflejan que inicialmente, el 16 de diciembre de 2025, el foro de instancia permitió el descubrimiento de prueba sobre las acciones de Turner Towers. Específicamente, permitió la valorización de dichas acciones para efectos de las operaciones particionales que tiene ante su consideración. Así las cosas, el TPI otorgó unas fechas límites para que las partes presentaran los informes sobre la tasación de estas acciones. A saber:

El 17 de abril de 2026 la parte demandante presentará los informes de tasación sobre las acciones de New York.

El 23 de julio de 2026 debe estar presentado el informe de las acciones de New York por la parte demandada en caso de haber contratado perito.

No es hasta el 9 de marzo de 2026 que los Recurridos presentaron su oposición a la orden de calendarización del descubrimiento de prueba, arguyendo que el TPI carecía de jurisdicción, toda vez que las acciones redundan en un inmueble sito en el estado de Nueva York. Por tal razón, sostuvieron que si los Peticionarios deseaban dejar sin efecto alguna transacción referente al traspaso de las acciones debían hacerlo en los tribunales de Nueva York.

Primeramente, es imprescindible partir de la premisa que los Peticionarios no están impugnando la transferencia de las acciones, ni la titularidad de las mismas. Tampoco solicitan la transferencia de dominio ni la modificación de los derechos sobre los bienes inmuebles en controversia. Lo único que éstos solicitan es que se les permita tasar los apartamentos para determinar a los cuales están vinculadas las acciones, de manera que se pueda establecer su valor y cumplir taxativamente con las disposiciones del Artículo 1787 del Código Civil, 31 LPRA sec. 11671. Así lo reconocieron en su recurso ante nuestra consideración.[1] En otras palabras, la controversia se reduce a que los Peticionarios aspiran a que se determine el valor de las acciones (bienes muebles) para que se pueda establecer un cómputo del caudal concreto y representativo de la realidad jurídica que exige nuestro Código Civil.

En vista de que el pleito que nos ocupa versa sobre la partición de la herencia de la sucesión Víctor Rafael Mercado Díaz, es forzoso concluir que dicha información está relacionada y es pertinente al asunto en controversia, sobre la cual existe jurisdicción de los tribunales locales. Así pues, somos del criterio que se debe permitir el descubrimiento de prueba solicitado por los Peticionarios.

El Código Civil es diáfano al disponer que se consideran bienes muebles "los intereses, las participaciones o **las acciones en entidades jurídicas, aunque estas sean titulares de derechos reales sobre bienes**

---

[1] *Véanse*, <u>Recurso de *certiorari*</u>, págs. 15-16; <u>SUMAC-TPI</u>, entrada núm. 103, pág. 13.

**inmuebles**". Art. 256 del Código Civil, 31 LPRA sec. 6063 (énfasis suplido). Por tanto, no existe cabida para argumentar la falta de jurisdicción de los tribunales de Puerto Rico para que se determine el valor de unas acciones vinculadas a bienes inmuebles en el estado de Nueva York, cuando el Código Civil es claro al establecer que por disposición de ley estas serán consideradas como bienes muebles.

Entonces, es a nuestro juicio indiscutible que, para propósitos de las operaciones particionales del caudal relicto del causante, es indispensable que se establezca el cómputo de la herencia. El cual, por operación de ley, requiere que se calcule el valor de las liberalidades computables que hizo en vida o por causa de muerte el finado a sus legitimarios. 31 LPRA sec. 11671. Solo así el TPI estará en condiciones de fijar la legítima correspondiente de la masa hereditaria e imputar las cuantías que entienda procedentes a dichos legitimarios a su porción de la legítima y, en caso de que exista un excedente, se imputen a la parte de libre disposición. 31 LPRA sec. 11673.

Nótese, pues, que nuestra conclusión está atada a las propias admisiones efectuadas por los Peticionarios, tanto ante el foro recurrido como ante este Tribunal de Apelaciones, a los efectos de que mediante el presente litigio no se cuestiona la titularidad de bien inmueble alguno en el estado de Nueva York, ni se solicita la transferencia de dominio, ni la modificación de derechos registrales sobre los apartamentos en controversia. Lo único que solicitan los Peticionarios es la inspección y tasación necesaria para determinar el valor de acciones corporativas (bienes muebles conforme al Artículo 256 del Código Civil de 2020, 31 LPRA sec. 6063) vinculadas a los apartamentos en Nueva York, a los fines de computar correctamente el caudal hereditario y fijar las porciones legitimarias correspondientes. Ello, a nuestro juicio, está dentro del alcance del descubrimiento de prueba dentro de este caso.

**IV.**

Por los fundamentos antes expuestos, los cuales hacemos formar parte integral de la presente *Sentencia, expedimos* el auto de *certiorari* y *revocamos* la *Resolución* recurrida.

Se devuelve el caso al foro de instancia para la continuación de los procedimientos, de conformidad con lo aquí expresado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones
